UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HEATHER ANNE SPENCER,

|                                 |                            |
|---------------------------------|----------------------------|
|                        Plaintiff, | Case # 19-CV-6053-FPG |
| v.                              | DECISION AND ORDER         |
| COMMISSIONER OF SOCIAL SECURITY, |                            |
|                        Defendant. |                            |

## INTRODUCTION

Plaintiff Heather Anne Spencer brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). [1] ECF Nos. 8, 10. For the reasons that follow, the Commissioner's motion is DENIED, Spencer's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In August 2015, Spencer protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 68, 83. She alleged disability since February 2014. Tr. 69, 84. On November 27, 2017, Administrative Law Judge Shawn Bozarth (the "ALJ") issued a decision

---

[1] While not docketed as a motion for judgment on the pleadings, the Court will construe Spencer's brief as such. *See* ECF No. 8.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

finding that Spencer is not disabled.  Tr. 10-22.  The Appeals Council denied Spencer's request for review in November 2018.  Tr. 1-3.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[3]  If so, the claimant is not disabled.  If not, the ALJ

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations.  *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

The ALJ analyzed Spencer's claim for benefits under the process described above. At step one, the ALJ found that Spencer had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ found that Spencer has severe impairments of lumbar degenerative disc disease, lupus, migraine headaches, obesity, attention deficit hyperactivity disorder, major depressive disorder, generalized anxiety disorder, and obsessive compulsive disorder. *Id.* At step three, the ALJ found that her impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Spencer retains the RFC to perform sedentary work with additional restrictions. Tr. 16. At step four, the ALJ found that Spencer cannot perform her past relevant work. Tr. 20. At step five, the ALJ found that Spencer can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 20-21. Accordingly, the ALJ concluded that Spencer is not disabled. Tr. 21-22.

Spencer argues, *inter alia*, that the manner in which the ALJ weighed and evaluated the opinions of her treating physician, Rodrigo Samodal, M.D., was erroneous. Because the Court agrees, it need not address, and takes no position on, Spencer's other arguments.

Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We

will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Dr. Samodal completed two medical opinions.  In September 2016, Dr. Samodal completed the first medical source statement.  Tr. 820-21.  He diagnosed Spencer with lupus, fibromyalgia, cluster headaches, and migraines—stating that each condition had a "poor prognosis" and was permanent in duration.  Tr. 820.  He opined that Spencer was moderately limited in her ability to walk, stand, and sit; was very limited her ability to lift, carry, push, pull, bend, and climb stairs; and was very limited in her ability to function in a work setting at a consistent pace.  Tr. 821.  Dr. Samodal stated that Spencer could perform limited office work for less than two hours per day. *Id.*  He did not otherwise quantify or describe Spencer's functional abilities.

One year later, in September 2017, Dr. Samodal completed a second opinion.  Tr. 982.  The second statement contains no diagnoses or clinical findings, but instead quantifies the extent of Spencer's functional limitations.  Dr. Samodal opines that Spencer can sit for about two hours and stand and walk for about two hours each workday.  *Id.*  Spencer must be able to shift positions at will and take unscheduled breaks, and will be absent more than four days per month.  *Id.*  Spencer can never twist or stoop and can never lift any amount of weight.  *Id.*

In his decision, the ALJ gave Dr. Samodal's first opinion "some weight with regard to severity, but less weight in that it fails to specify the amount of weight the claimant can lift and carry, duration that she can sit, stand, and walk, and frequency with which she could push, pull, bend or stair climb."  Tr. 20.  The ALJ gave the second opinion "no weight" because Dr. Samodal "fails to provide any explanation for those limitations."  *Id.*

The ALJ's reasoning is puzzling.  The ALJ discounts Dr. Samodal's first opinion because it fails to quantify the functional limitations that it describes, while faulting the second opinion for

failing to adequately describe the functional limitations that it quantifies.  But read together, these opinions articulate Dr. Samodal's consistent view on the nature and severity of Spencer's conditions.  It seems unreasonable to fault each opinion for omissions that are cured if the opinions are read together.  In this respect, the ALJ's criticism of Dr. Samodal's opinions is overly formalistic and, put simply, not a "good reason." [4]

More importantly, by analyzing the opinions separately, the ALJ appears to have mischaracterized Dr. Samodal's first opinion.  *See Cartwright v. Comm'r of Soc. Sec.*, No. 19-CV-6543, 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) (stating that an ALJ may not rely on "a mischaracterization to meet the substantial evidence test"); *Hill v. Berryhill*, No. 17-CV-672, 2019 WL 1198356, at *7 (W.D.N.Y. Mar. 14, 2019) (collecting cases where courts remanded due to an ALJ's misinterpretation of a medical opinion).  Specifically, the ALJ purported to give "some weight" to Dr. Samodal's first opinion "with regard to severity"—*i.e.*, that Spencer was "very limited with regard to lifting, carrying, pushing, pulling, bending, and stairs climbing, but was moderately limited with regard to walking, standing, and sitting."  Tr. 20.  Given Dr. Samodal's second opinion, it is evident that Dr. Samodal used the terms "very limited" and "moderately limited" to refer to specific, quantifiable functional limitations.  For example, by a "moderate" walking limitation, Dr. Samodal meant that Spencer could walk about two hours per day.  *See* Tr. 821, 982.

---

[4] The lack of consistency with the record can be a "good reason" to reject a medical opinion, *see* 20 C.F.R. § 1527(c)(4), and in this case the ALJ also discounted Dr. Samodal's second opinion because it was "inconsistent with the stable nature of [Spencer's] lupus and headaches and improvement of her lumbar spine conditions with injections." Tr. 20.  Nevertheless, because the ALJ mischaracterized Dr. Samodal's first opinion, and because it is unclear how much that mischaracterization influenced the ALJ's reading of the record as a whole, the purported lack of consistency is not an independently valid reason to affirm the ALJ's weighing of Dr. Samodal's opinions. *See Erica M. v. Saul*, No. 18-CV-456, 2019 WL 4257165, at *10 (N.D.N.Y. Sept. 9, 2019) (stating that an erroneous reason for rejecting a treating physician opinion constitutes harmless error where the ALJ provides other good reasons).

However, the ALJ did not construe the first opinion in light of the second opinion, and did not interpret the terms "moderately" and "very" limited to "specify the amount of weight [Spencer] can lift and carry, [the] duration that she can sit, stand, and walk, [or the] frequency with which she could push, pull, bend, or stair climb." Tr. 20. In other words, without the context of the second opinion, the ALJ did not interpret those terms in accordance with Dr. Samodal's intended meaning. That is problematic, since terms like "moderately limited" are too vague to rely upon unless the surrounding context gives them a concrete meaning. *See Blau v. Berryhill*, 395 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("[T]he Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' *absent additional information*." (emphasis added)). Having interpreted Dr. Samodal's first opinion without the necessary context, it is not only unclear how the ALJ interpreted the first opinion, but how he incorporated that opinion into his ultimate RFC determination. The ALJ's decontextualized reading of, and reliance on, the first opinion constitutes error warranting remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and Spencer's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 30, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court